Case number 21-2851 Edward Render versus FCA US LLC. Oral argument 15 minutes per side. Mr. Stippian for the appellants. You may proceed. Thank you. Good afternoon your honors. This is a case for an FMLA interference and retaliation claims. I and what is the what was the notice requirements number one and number two what factually did my client say in order to meet those requirements. But I think the case most importantly is going to turn on the issue of what standard does the court apply. The trial court and the defendant argues here as well that the court should apply this heightened standard for notice that the Department of Labor passed back in 2009 and this was codified in the regulations under CFR 825.303. In 2009 the Department of Labor modified the notice requirements but only in a specific instance. And that standard does not apply to our particular case. The court should not apply this heightened standard of notice requirements. And the reason for that is is that the Department of Labor in passing this revised or this revision to the regulation and this is regulation 825.303 B. What they said was in certain circumstances the employee must specifically reference either the qualifying reason for the leave or you know use FMLA. But the key to that is in what circumstances are they going to in the Department of Labor has said we require this heightened notice requirement only when the employee seeks leave due to a qualifying reason for which the employer has previously provided the employee FMLA protected leave. In this case my client had never had an FMLA protected leave prior to the fact of the case that's why I'm kind of jumping right into the argument but but just to kind of to fill that in a little bit. The first day that my client was off work was December 6, 2017. Then he was off work on December 7, 2017 and then he was tardy on December 8, 2017. The first day that he was off was that the trial judge found that my client required to either specifically reference his qualifying reason for the need for the leave or to specifically mention FMLA. However that standard doesn't apply because my client had never had an FMLA protected leave in the past. But hadn't your client been authorized to take FMLA leave earlier than that December 6th date? No he was conditionally approved for FMLA in the letter from Sedgwick that was sent to my client specifically says you're conditionally approved. Once you get that first day and you call it in then we determine whether or not it's an FMLA qualifying event or not. And that was also affirmed by the deposition testimony of LaVonda Mitchell who was the HR representative who was handling this particular FMLA question. So he had submitted a certification and had received conditional approval. However the heightened standard only comes into play when he's had a prior FMLA qualifying leave which he had not had yet. So anything maybe after December 6 if he was approved for FMLA now yes now he probably has to give that heightened notice requirement. But at that time he hadn't had one yet. So then did he give the heightened notice after the December 6th absence i.e. for the December 7th or the tardy on 8th? No but he still had not had an FMLA qualified leave because they didn't designate it as FMLA. So they put him in the box sort of they're saying well we're not approving FMLA you don't have an FMLA leave so then how can he then later have a heightened requirement when he still hasn't that prerequisite still had not been met on December 7th or December 8th. When was that prerequisite met? It's never been because he's never been given an FMLA qualifying leave. See I think the defendant conflates two things here. The defendant argues in its brief that because he had been certified right because he had turned in the medical certification and because he had received this conditional approval the it was triggered but that actually isn't the trigger. The trigger just on the plain language of the regulation is the triggering event is having had a prior FMLA leave. Well if he doesn't have to... You know counsel my looking at the record seems to be quite different from the way you described the facts and what's going on in that on November 14th 2017 this Cedric company that the SCA was using sent Mr. Render a letter conditionally approving the request for intermittent leave with a phone number to report his absences and and and as I understand he had been approved for the leave contrary to what you're saying there you're sort of indicating your client your client had not. Now he previously got received a letter regarding his medical certification form where he was told to and that was on October 26 2017 he was he was he was told to call a certain telephone number if if he wanted to request request leave but he was as I understand he was conditionally approved on November 14th. Is your understanding different from that? It is not. My argument is not that he wasn't conditionally approved. My argument is that the the unambiguous language of the regulation only triggers the heightened notice requirement after he has previously been provided an FMLA protected leave. That's what the regulation says. He had not used a leave as of December 16th. If he doesn't fall under the family leave act in this case then what's wrong with firing him for excessive absenteeism period. Okay but let me clarify I apologize judge I'm not arguing at all that it doesn't fall under the FMLA. I'm referring to the regulation regarding unforeseeable leave. Correct. Yes. Well I don't think that applies here. I think the regulate that's the wrong regulation. The regulation is the foreseeable leave regulation because that's the regulation that governs intermittent leave which is what he was pursuing. So the qualifying reason which is the medical condition is foreseeable under the intermittent leave cases and when you you're analyzing this under the wrong regulation I believe. Well this is the analysis that the trial court did that the defendant argues that the unforeseeable and it is I don't. I'm sorry I think the trial court was incorrect because the leave here just doesn't fit the definition that that of the regulation that you're using. Well I would say I would disagree that intermittent is exclusive of unforeseeable. I don't think those two things are mutually exclusive. Intermittent can be unforeseeable because intermittent means if you have for example in a case like this a time where you might have flare-ups of a chronic condition that might be unforeseeable. So intermittent could be either foreseeable or unforeseeable. No the qualifying reason which is the medical condition is foreseeable because we know what the condition is pursuant to which he's requesting intermittent leave and there are cases that that illustrate what I'm Well I respectfully would disagree. I don't think that the foreseeable versus unforeseeable is related to the medical condition itself. I think it's related to the need for the leave whether the need for the leave was foreseeable or unforeseeable. Speaking only for myself you're likely to lose your case if we follow your approach here I think. It's just not you're just under the wrong regulation. I believe it I agree I I'm the one arguing that 303 shouldn't apply. I agree with you judge. So what does apply and I think it's the and it's point 301 which is the designation of FMLE leave regulation which lays out the process of the responsibilities for the employer and the employee when somebody calls in that arguably could be in a request for an FMLE leave and what are the obligations at that point so if you follow the standard the Department of Labor is laid out in in 825.301 it says okay the employee you know calls in and they have to give notice you know but they don't have to expressly give their FMLE rights they don't expressly stated okay they just have to give enough information to sort of trigger the employer and then the employers responsibility is to then inquire further if they don't believe they have enough information and in this case whether they inquired further or didn't inquire further the facts are that on December 8th two days later my client specifically invoked the FMLA and so I agree judge that that the regulation I just argued against shouldn't be applied it 303 should not apply because you don't have the the triggering event that occurred for that to apply here you just have to look at normal okay what did he say did it trigger their need to then to then ask further and then if they're still unclear such subsection C of 825.301 says if there's a dispute they all have to get together and have a discussion and again if that occurred which it might have on December 8th my client specifically invoked FMLA on December 8th so if they were unclear on the first two days and they had this obligation to inquire further and have this discussion with my client they had it in it on December 8th what can we do with your clients deposition testimony that he had the you're right I think he was asked about it in his deposition and he admitted that he did that he did tell the NLRB that that's a question of credibility they can argue that to the jury all they want credibility he said because he testified in this case that he did that he in fact had a flare-up of his depression and anxiety since you're arguing you're gonna be to the jury that he lied then but he didn't lie now I mean I don't understand well he had his reasons for why he said the flu and he explained it and said he was embarrassed he's embarrassed about having panic attacks and he didn't want to talk about it he admits that he didn't do it but again I don't believe the court can simply say well we're gonna choose to believe we have to look at a little bit employers side and what does he do when he's told that the man once has a flu well that flu statement came well after he was fired that was as a result of an unfair labor practice charge filed with the NLRB months after he was let go and so they couldn't have relied on it I believe mr. Burnett would agree with me that that affidavit was well after he was discharged are you gonna say anything further or more about how your client satisfied the notice requirement I mean that might be a little problematic we don't agree about what's the what the appropriate regulation is but just in terms of what your client did to satisfy the notice requirement do you have anything more to say about that I do I do I I mean I'll just but I'm already over my time but if the court will indulge me I can very briefly address that the he used the words flare-up he called the FM LA number that he was given specifically by the FM LA administrator okay he had an approved FM LA leave at the time he said I'm having a flare-up which was exactly the language that his doctor used in the certification identical language and he said to them I need to go to the doctor so the question then becomes not whether or not is that well it is a question whether sufficient notice but it only has to be sufficient notice to trigger their responsibility to then inquire further right so so under the law under this the regulation I'm talking about eight two five point three zero one he has to then they have to if they still have questions in their mind they have to inquire further by according to the Department of Labor that is just the standard that is the law that is what is required that if they don't have enough information they have to ask for the detail the flare-up story to his to the employer line but it was the number he was given by Cedric to call well if two numbers and I admit that's a problem but seems to me Cedric are the people that have his files that would be triggered in a sense to go into more wouldn't and that's what that's probably well except for that I don't think that you can I mean we're talking about agency now at this point then because Cedric is their agent I mean they are one in the same the agent acts for the principal correct for the purposes of this you know this FMLA process they are the agent and they sent a letter saying if you have to have an absence call the number below right below that is a phone number saying for all absences call this number somewhere way at the bottom of that second page is a another phone number that says I realize you know and I have a problem with that as you do but I'm just wondering from the corporation standpoint when they haven't been involved in partially granting the Medical Leave Act what would spur them on to ask more questions well but but to me I think that's I think that's backwards because they're the ones who said here call this number this is the number you call to do all this and when he does that he has a right to rely on that because they're the ones that gave it to him so you know said through their agent Cedric this was the phone number he was given he didn't have any other information as to which to call or the corporation correct as their agent for this purpose absolutely for sure I think we've taken you well beyond your time thank you very much thank you mr. Burnett good afternoon your honor Terry Burnett on behalf of FCA you I I want to begin by correcting a couple of things that I believe are misleading and so I'm going to start with the most recent conversation and that is to talk about whether or not adequate notice was given and while I do believe that section 303 B is the proper standard to regardless of what standard we apply the question becomes did FCA US have reasonable notice on any of the dates that mr. render called in that he intended to use his pre-approved FMLA leave and the answer to that question is no he says he is having a flare-up that he needs to go to the doctor that he's sick none of that suggests that he has an FMLA qualifying condition none of that suggests that he is suffering from an anxiety attack or a moment of depression but wouldn't the fact that he said that he had a flare-up in conjunction with the doctor's statement that he had a mental health situation where he would have flare-ups and he would need intermittent leave a couple of days a month wouldn't that be enough to put the employer on notice but the no your honor I believe there wasn't a duty to inquire further first but even if there was to say he's having a flare-up a flare-up of what we can't ignore the testimony of plaintiffs himself in this case that he purposefully obfuscated the reasons for his absence when he was asked you know what should I record is the reason from your for your absence sickness was his response he was asked a follow-up question so is there anything else you know I am I recording sickness and mr. render testified that he was embarrassed by his condition and that he didn't want to provide the information so even if we look to the standard in 301 which again I believe is the incorrect standard he doesn't even meet that but when we look at the standard in section 303 be it the standard for when there has been pre-approved leave and when that leave is unforeseeable my perspective on the FMLA and foreseeable versus unforeseeable leave your honor is this foreseeable leave is that leave that says I know that on September 30th I'm going to have surgery and so the employer as much notice of that in advance as I can as much as 30 days notice that I need this leave on September 30th unforeseeable leave is when you have a condition in which you don't know on which days you will need to be absent for example migraines or some in this case a flare-up of a chronic condition and that specifically if we look to the preamble of the amendment these are the questions that the Department of Labor answered at that point specifically they give the example in that preamble that unforeseeable leave for a previously certified FMLA condition example a flare-up of a chronic condition should be required to expressly assert their FMLA rights and the reasoning for this is also explained in that preamble the Department of Labor explained section 303 B has been changed to include a different notice standard when the employee requests unforeseen leave due to a previously certified FMLA qualifying reason now mr. Stimpy and wants you to believe that because mr. render had never actually taken a day off that this was not as the Department of Labor explained a certified FMLA qualifying reason it had been certified so when is your position that it was certified as early as 2015 your honor mr. render had applied for intermittent FIM law leave before he was terminated the first time and when he came back he was educated enough about the FIM law to know that to call Sedgwick and say have I have I worked enough hours to be requalified for FMLA yet said no several months go by he calls again so this is an educated FMLA user he is not naive and this is exactly the situation that the Department of Labor amended section 303 B to address was he certified or was he conditionally certified in I guess it was October his condition was certified as FMLA qualified the question about the pre approval is this eligibility for leave is determined upon the number of hours you've worked in the 12 months up to the first day of the leave so Sedgwick certifies his condition anxiety and depression as FMLA qualified and then sets we still need to determine on the first day that you want to leave whether you're still eligible at that point meaning have you worked 1,250 hours as of that day so the condition has been certified the question remaining to be answered is if he remains eligible at the time of the first day of leave well that's not an issue in this case that's the whether he was still eligible the issue really is is whether he appropriate notice was given under the regulation correct under those regulations the employee has to give a qualifying reason but does not have to mention FMLA every time he calls once he's been approved all he's got the medical condition which is the leave cases which is why continue to think you as well under the wrong regulation here once once he's given once he's approved he doesn't have to say he doesn't have to reference FMLA every time he calls and the cases specifically say that if the employer has any doubt or questions he's supposed to follow up and ask that ask for clarification but but we've got a big problem here in terms of notice because your client gave him contradictory phone numbers and instructions which is a problem with without maybe I should ask you to address that certainly your honor it is not contradictory phone numbers it is not contradictory instructions the instructions were very simple on the first day that you wish to use FMLA you need to call FCA and report your absence but before you do that you also need to call us and report that absence so there are two phone numbers one to FCA one to Sedgwick and he was instructed to call both he was on November 14th said which sent him a letter conditionally approving and did not clearly state he had to call both phone numbers he had to said which gave him the FCA phone number and there was he was told that if there was any if there was a problem there was another phone number that could be but he wasn't he wasn't told that he had to what what illustrates that there was confusion about the phone numbers is that this in the Mitchell deposition the person who made the termination decision didn't understand which phone number he was supposed to call that's not true what is right in the transcript that position is she was asked is this number the number to Sedgwick and miss Mitchell said I believe it is but I don't know that for a fact I don't know she said that only the FCA 1-800 number had to be called and when she was cross-examined because her testimony didn't comport with the facts she changed her testimony and said that both the FCA and Sedgwick had to be called so I mean she didn't know what had to be called that and she's the person making the termination decision. I believe miss Mitchell testified that he had to call both numbers and that when she was asked if one of those numbers with Sedgwick said you know Mr. Stippian asked her is this Sedgwick's telephone number she answered honestly I don't know if that is Sedgwick's telephone number I think it is but I don't know that for a fact I don't have it memorized is what she was okay well we have the transcript the transcript is obviously going to speak for itself. Assume that we felt that the letter with the two numbers was ambiguous would that mean that we should allow Mr. Render's case to go forward? I don't believe that in light of his testimony that he purposely obfuscated the reason for that absence would permit that because regardless of what standard we're applying regardless of whether he just had to notify FCA or regardless of whether he had to notify FCA and Sedgwick both the ultimate question is this did FCA receive adequate notice of his intent to use FMLA when he the answer to that question is no when he's saying I didn't want to tell them what was wrong with me you can't expect FCA to be omniscient and simply no FCA have inquired further though especially given that he used the word flare-up at one point if he's purposely not revealing that information it would not have done any good for FCA to follow up and particularly in that first call they did follow up they asked repeatedly what should I record as the reason for your absence and he did not provide them with the information that the FMLA requires in order to invoke the protection of that act. Counselor I don't want to put words in your mouth but you started to say he was requisite number of hours is that correct? Correct the qualifying condition was certified. And the qualification is the numbers and Sedgwick would determine that? Correct. He would ask Sedgwick to determine that? Correct. It seems to me the qualified numbers are either he either has them or he doesn't have them and why do you need to have this question? Because FMLA works on a rolling calendar basis so just because I've worked 1,250 hours today yeah but as we look at it those hours will fall off over the next month. As we look at it today he either worked those number of hours or he didn't so what's the necessity of the Sedgwick discussion? It is just to you know there's another problem in the case that I'd like you to address because it seems as though one of the reasons why Mr. Render was not approved was that the operator who was taking his calls was inputting or putting down the wrong code number that didn't match the call because there's a particular as I understand a particular code number for FMLA and she wasn't using that so when Mitchell went to perform her investigation none of the code numbers matched FMLA calls and there was an issue where there wasn't an issue the company refused to correct or said they couldn't correct an incorrect input of these code numbers and Mitchell subsequently seemed to suggest that she was making her decision in large part based upon how the phone calls were coded by the operator could you and and she didn't investigate or even though she said she had the power to change and correct the code numbers she she she didn't do that she declined to do that can you address that problem in the case certainly on it the operator didn't use the wrong code numbers the operator used the code numbers based upon what mr. render told him when he called in he did not provide notice that this was FMLA qualifying so the operator did not use the FMLA code he used the sick time code now miss Mitchell's position is this when mr. render then comes and says well these should have been coded a sim law she reviews the tape recordings to figure out whether or not he provided notice at that time and it's very important to understand that at no point did mr. render say that these absences should have been coded a sim law until he's put on notice that he's in violation of his last chance agreement and only then does he say oh wait wait wait wait wait I didn't have the flu I wasn't sick I I was using sim law so if it were you know possible to just go back and change the coding it would defeat the purpose of having that notice in the first place that any employee who is in fear of being disciplined for inappropriate actions could just say oh you know I let's change that to sim law and it's protected when it's done after the fact it defeats the purpose any employee that has pre-approved them law which goes to that why 303 B reads as it does 303 B says when an employee with pre-approved them law needs to use it they have to reference it when they call in and in this case mr. render purposefully did not and you're saying also and it's not enough for him to say he had a flare-up when the flare-up is what the doctor said was going to be happening and would be the cause of a need for FMLA under the circumstances a flare-up of what your honor it you know wouldn't there be a way to inquire what the flare-up was by the person such as Mitchell who is undertaking an analysis of whether the leave should be FMLA approved or not well what we have to go by if we have to go by the notice that was provided at the time of call in under 303 B so 303 B does not allow for inquiry by the employer to find out what the reason for the leave is and then a determination by the employer as to whether that is or is not FMLA it puts the burden on the employee to make sure that that FMLA leave is being invoked in advance of the leave so is your position that the employee has to say FMLA leave no he could say one of two things he could say I'm not going to be in today I want to use my FMLA leave or he could say I'm not going to be in today I'm having an anxiety attack or I'm suffering from depression enough if mr. render had said I'm suffering from an I think there's a little bit of time for rebuttal yes thank you judge the only just a couple points that I want to bring up number one is again I you know I want to make sure it's clear because I was going back and forth a little bit with judge clay I completely agree that the 303 does not apply that is my position in this case at 301 is the proper analysis in this case and mr. Burnett wants to well two things are happening here one is they the defendant wants to look at the preamble to say this is you know you should look at the preamble to help you analyze when 303 B is triggered however under you know any type of statutory analysis statutory construction if the language of the regulation itself is not ambiguous you shouldn't look at the preamble you look at the outside stuff here 303 B on its own terms very clearly uses the word leave it doesn't use the word pre-approved doesn't use the words certified it doesn't use it it says if you've had a previously FMLA qualifying leave and that's a very clear term does not need further definition and it does not apply in this case he had not had an FMLA qualifying leave up to that point so so that does not apply so then you look at 301 which I've gone through that analysis I'm not going to do that again but that is the proper analysis is under 301 with regard to my clients testimony that he purposely obfuscated I don't think those are quite the words he used in his testimony but I understand mr. Burnett's point he did say that he was embarrassed and that he was embarrassed about what he was going through in terms of his anxiety attacks however the fact of the matter is you still have to look at the words right it doesn't matter if he later said well I was embarrassed so I didn't quite say it the way you know as clearly as I could have the fact is we look at the words themselves that he used and not only at the words but I would encourage the court that we should look at all of the circumstances of his notice the words he used the fact that he was calling the FMLA line that he was specifically told that he had to call the fact that he used that he was already pre-approved or pre-certified for this FMLA leave all of those things combined when you look at the words flare-up you look at the words I have to go to the doctor you look at all those things is the entirety of the circumstances there were sufficient notice to trigger their duty to then inquire further that's all I am thank you thank you both for your argument and the case will be submitted